The STATE ex rel. DiFRANGIA, Appellant,

v.

TRUMBULL COUNTY BOARD OF COMMISSIONERS, Appellee.

[Cite as *State ex rel. DiFrangia v. Trumbull Cty.*
*Bd. of Commrs.* (1994), 99 Ohio App.3d 569.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

Decided Dec. 27, 1994.

*Charles E. Dunlap,* for appellant.

*Dennis Watkins,* Trumbull County Prosecuting Attorney, and *James J. Misocky,* Assistant Prosecuting Attorney, for appellee.

Joseph E. Mahoney, Judge.

On December 21, 1992, appellee, the Trumbull County Board of Commissioners, adopted a countywide enhanced 9–1–1 plan. Under the plan, appellee was authorized to seek a real estate tax assessment of $3 on each improved parcel of real property per year, pursuant to R.C. 4931.51, for costs associated with the countywide system. On March 9, 1993, appellee passed a resolution eliminating the $3 tax assessment. Instead, appellee elected to use general fund revenues to finance the initial costs of the 9–1–1 plan.

On August 5, 1993, Roger DiFrangia filed an action in the Trumbull County Court of Common Pleas for a declaratory judgment and injunctive relief, alleging that appellee improperly modified the 9–1–1 plan and improperly funded public safety answering points ("PSAPs"). On August 17, 1993, appellee filed a motion for summary judgment. On September 1, 1993, appellant filed an answer to the motion for summary judgment, as well as his own motion for summary judgment.

On September 8, 1993, the trial court granted appellee's motion for summary judgment and denied appellant's motion for summary judgment. The court concluded that the removal of the $3 assessment did not qualify as an amendment to the 9–1–1 plan that would require the convening of a new 9–1–1 planning committee and a new ratification process.

Appellant timely filed a notice of appeal with a single assignment of error:

"The trial court erred to the prejudice of plaintiff-appellant in granting the defendant-appellee a summary judgment and denying his counter-motion for summary judgment."

In the sole assignment of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment.

First, appellant argues that the action of appellee on March 9, 1993, of passing a resolution eliminating the $3 tax assessment, constituted an amendment of the 9–1–1 plan pursuant to R.C. 4931.45(A), which, therefore, required the convening of a new 9–1–1 planning committee and a new ratification process.

R.C. 4931.45(A) states, in relevant part:

"A final plan may be amended to expand the territory included in the countywide 9–1–1 system, to upgrade any part or all of a system from basic 9–1–1 to enhanced 9–1–1 service, to adjust the territory served by a public safety answering point, to represcribe the funding of public safety answering points as between the alternatives set forth in division (B)(5) of section 4931.43 of the Revised Code, or to make any other necessary adjustments to the plan only by convening a new 9–1–1 planning committee, and adopting an amended final plan. * * * "

Pursuant to R.C. 4931.51:

"(A)(1) For the purpose of paying the costs of establishing, equipping, and furnishing one or more public safety answering points as part of a countywide 9–1–1 system effective under division (B) of section 4931.44 of the Revised Code and paying the expense of administering and enforcing this section, the board of county commissioners of a county, in accordance with this section, may fix and impose, on each lot or parcel of real property in the county that is owned by a person, municipal corporation, township, or other political subdivision and is improved, or is in the process of being improved, reasonable charges to be paid by each such owner. * * *

"(B) * * * The board by resolution may change any charge imposed under this section whenever the board considers it advisable. * * * "

Additionally, R.C. 4931.43(B)(5) states as follows:

"(B) The proposal and the final plan adopted by the committee shall specify:
" * * *

"(5). Whether the cost of establishing, equipping, furnishing, operating, or maintaining each public safety answering point should be funded through charges imposed under section 4931.51 of the Revised Code or will be allocated among the subdivisions served by the answering point and, if any such cost is to be allocated, the formula for so allocating it * * *."

It is apparent from these statutes that if a final plan for a 9–1–1 system is amended to represcribe the funding of PSAPs as between the alternatives set forth in R.C. 4931.43(B)(5), then the convening of a new 9–1–1 planning committee and an amended final plan are necessary. These alternatives are charging a reasonable assessment to real property owners or allocating the charges to the subdivisions served by the PSAP.

The statute does not provide that the convening of a new 9–1–1 planning committee is necessary when the funding is represcribed from an assessment paid by real property owners to general county fund revenues. The statute specifically refers to two, and only two, alternatives. Neither of these alternatives is present in the instant case and, therefore, the provision of R.C. 4931.45(A) that requires the convening of a new 9–1–1 planning committee is not triggered.

In the present case, appellee attempted to eliminate the proposed $3 assessment and rely solely on general fund revenues. Pursuant to R.C. 4931.51(B), appellee may change any assessment charge imposed whenever appellee considers it advisable. Appellee argues, therefore, that it was authorized to change the assessment from $3 per property owner to $0 per property owner without having to convene a new 9–1–1 planning committee. Appellee contends that change in

funding here is not an amendment to the plan which would require resubmission to all of the subdivisions.

Appellee's argument is supported by the plain language of the statute. There is nothing to support appellant's contention that the elimination of the assessment requires the convening of a new 9–1–1 planning committee. Thus, appellant's first argument is without merit.

Next, appellant argues that the portion of appellee's final plan that provides that appellee shall purchase and maintain the equipment for the various PSAPs in the county is not permitted pursuant to R.C. 4931.41(B).

Actually, appellant's argument is based upon R.C. 4931.41(D), which provides, in pertinent part:

"Each public safety answering point shall be operated by a subdivision and shall be operated constantly.

"A subdivision that operates a public safety answering point shall pay all of the costs associated with establishing, equipping, furnishing, operating, and maintaining that facility and shall allocate those costs among itself and the subdivisions served by the answering point based on the allocation formula in a final plan. * * * "

Pursuant to appellee's plan, however, the county commissioners were made responsible for the costs of establishing and maintaining the PSAPs. The plan states at 15:

"Political subdivisions will not pay for direct costs to provide the equipment furnished to the various PSAP's. Purchase of the equipment and its normal maintenance will be the responsibility of the Trumbull County Commissioners. The political jurisdictions operating the PSAP's will be responsible for the personnel costs and expendable supplies required to operate the PSAP's.

"The Board of County Commissioners shall pass a resolution for the purpose of paying the costs of establishing, equipping, and furnishing public safety answering points (PSAP's) as part of a Countywide E9–1–1 system."

It is clear that in enacting R.C. 4931.40 *et seq.*, the legislature envisioned the county itself as being the geographic boundary for each 9–1–1 system. R.C. 4931.41 explains the setup of a countywide 9–1–1 system. R.C. 4931.45(A) and 4931.51 each refer to a countywide 9–1–1 system. In fact, R.C. 4931.40(D) specifically defines "subdivision" as including a county.

Additionally, R.C. 4931.40(L) defines "subdivision served by a public safety answering point" as meaning: "a subdivision that provides emergency service for any part of its territory that is located within the territory of a public safety

answering point whether the subdivision provides the emergency service with its own employees or pursuant to a contract."

Thus, contrary to appellant's argument, the above definitions and code sections are not incompatible with R.C. 4931.41(D). Since a county can be properly designated as a subdivision, there is no inconsistency between appellee's final plan and the Ohio Revised Code. Substituting the word "county" for the word "subdivision" in R.C. 4931.41(D) produces the following result:

"Each public safety answering point shall be operated by a [county] and shall be operated constantly.

"A [county] that operates a public safety answering point shall pay all of the costs associated with establishing, equipping, furnishing, operating, and maintaining that facility and shall allocate those costs among itself and the subdivisions served by the answering point based on the allocation formula in a final plan. * * * "

■ Based upon the foregoing analysis, it is evident that the county does have the authority to purchase and maintain the equipment required for a countywide 9–1–1 system. Thus, appellee's final plan does not violate the Ohio Revised Code. Appellant's second argument is, therefore, without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and CHRISTLEY, J., concur.